UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY JORDAN, JR.,

                Plaintiff,

v.                                                                         8:15-CV-0436
                                                                         (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                 OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON          STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                 DANIEL R. JANES, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Gary Jordan, Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

   Plaintiff was born on May 16, 1972. Plaintiff has a high school education and has past work as an assembly worker. Generally, Plaintiff's alleged disability consists of degenerative disc disease, a bulging disc, arthritis in the lower lumbar and thoracic region, and torn ligaments in the hip and pelvis. Plaintiff's alleged disability onset date is June 15, 2011.

   B.      **Procedural History**

   On April 6, 2012, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's application was initially denied on May 10, 2012, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). On February 14, 2013, Plaintiff appeared in a video hearing before the ALJ, Julia D. Gibbs. (T. 24-51.) On March 1, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-23.) On February 18, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

   C.      **The ALJ's Decision**

   Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 15-19.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 15, 2011, the alleged onset date. (T. 15.) Second, the ALJ found that Plaintiff's degenerative disc disease and history of diverticulitis were severe impairments. (*Id.*) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 15-16.) Fourth, the ALJ found that Plaintiff "has the residual functional capacity ["RFC"] to

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[1] except that the claimant requires the ability to sit or stand every 30 minutes and is unable to stand for more than 40 minutes consecutively." (T. 16-17.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 17.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 18.)

D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff argues that the ALJ committed reversible error by failing to address and weigh the opinions of treating orthopedic surgeons, Gregory Shankman, M.D., and Marc Bergeron, M.D. (Dkt. No. 12, at 3-5 [Pl.'s Mem. of Law].)

Generally, Defendant argues that the ALJ's RFC finding reflects her consideration of all of the medical evidence, including the opinions of Plaintiff's treating physicians. (Dkt. No. 14, at 6-10 [Def.'s Mem. of Law].)

II. RELEVANT LEGAL STANDARD

A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence

---

[1] Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.927(a); SSR 83-10, 1983 WL 31251 (1983).

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

III.   **ANALYSIS**

A.     **Whether the ALJ Erred in Weighing the Medical Opinion Evidence in Determining Plaintiff's RFC**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12, at 3-5 [Pl.'s Mem. of

5

Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. §§ 404.1545[a][3]-[4], 416.945[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 404.1527(c), 416.927(c)(2); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

Here, the record contains assessments of Plaintiff's physical work-related abilities and limitations from the following three acceptable medical sources: (1) treating orthopedic surgeon, Michael Zahn, M.D., (2) treating orthopedic surgeon, Gregory Shankman, M.D., and (3) treating orthopedic surgeon, Marc Bergeron, M.D. (T. 234-37, 416-18, 457-58, 542-43.)

### i. Treating Orthopedic Surgeon, Dr. Zahn

On April 16, 2012, Dr. Zahn noted that Plaintiff "has been out of work now for quite some time due to the physical nature of his job" as a forklift operator and order puller. (T. 236-37.) Dr. Zahn recommended "a more sedentary-type job" for Plaintiff, "without a lot of heavy lifting, pushing or pulling." (T. 237.)

Dr. Zhan's assessment includes his diagnoses of Plaintiff's physical impairments and objective medical evidence supporting his opinion of Plaintiff's resulting limitations. (T. 234-37.) Dr. Zahn diagnosed Plaintiff with a right hip labral tear and cyst with mild degenerative changes, left side lumbar radiculopathy with some mild weakness, and a history of diverticulitis.

7

(T. 237.) Dr. Zahn observed that x-ray and MRI examinations of Plaintiff's right hip and pelvis revealed a labral cyst, some slight flattening of the femoral head, and mild degenerative changes. (T. 234.)

### ii. Treating Orthopedic Surgeon, Dr. Shankman[2]

On January 4, 2012, Dr. Shankman opined that Plaintiff could work "at a light duty level," including lifting and carrying 25 pounds or less. (T. 457.) Dr. Shankman opined that Plaintiff could not climb heights or perform rapid repetitive motion with his back, and would need to sit and stand "at his own volition." (T. 457-58.)

Dr. Shankman's assessment includes his diagnoses of Plaintiff's physical impairments and objective medical evidence supporting his opinion of Plaintiff's resulting limitations. (T. 455-58.) Dr. Shankman diagnosed Plaintiff with a thoracic herniated disc and degenerative disc disease that was preexisting and then aggravated by a back injury in June 2011. (T. 455, 457.) Dr. Shankman observed that x-ray examinations of Plaintiff's lumbar and thoracic spines in July 2011 showed hemangioma with degenerative disc disease in the lumbar spine; multilevel degenerative changes in the back with probable Schmorl's nodes in the thoracic spine; mild disc herniations; and likely modic changes predominantly at T12 and T8. (T. 456.) Dr. Shankman further observed that an electromyographic study in December 2011 showed lumbar radiculopathy from L2 to L4.

---

[2] The record also includes an opinion of Plaintiff's temporary limitations from Dr. Shankman, dated September 9, 2011. (T. 418.) Dr. Shankman opined that Plaintiff could work "at a modified duty level for two months, and then return to full duty." (*Id.*) More specifically, Dr. Shankman opined that Plaintiff could start at modified duty with lifting and carrying 35 to 40 pounds or less; could not work overhead, climb heights, perform rapid repetitive motion with the back, or work in cramped or confined positions; and would need to sit and stand at his own volition. (*Id.*)

### iii. Treating Orthopedic Surgeon, Dr. Bergeron

On July 26, 2012, Dr. Bergeron opined that Plaintiff could not return to his regular work without any restrictions. (T. 542.) Dr. Bergeron opined that Plaintiff could "do a type of work that would allow him to sit, stand and walk as tolerated" with no standing or walking in combination for more than approximately 30 to 40 minutes per hour, and no large range of motion of the lumbar area. (T. 543.) Dr. Bergeron opined that Plaintiff should avoid stooping, crawling, reaching, and work at heights and ladders. (*Id.*) Finally, Dr. Bergeron opined that Plaintiff should not push, pull, lift or carry more than approximately 25 pounds occasionally and 12 pounds frequently. (*Id.*)

Dr. Bergeron's assessment cites objective medical evidence and clinical findings that support his opinion of Plaintiff's work-related limitations. (T. 535-43.) For example, Dr. Bergeron observed that Plaintiff's MRI examinations indicated some abnormality and that Plaintiff had an abnormal physical examination with tenderness in the low lumbar area on the right and to the sacroiliac joint, superior to it, and just lateral to the spinous processes. (T. 538.) Dr. Bergeron observed that a femoral stretch test increased the pain on Plaintiff's left, with some radiation into the left thigh, and Plaintiff exhibited nonsymmetric reflexes in the ankles and some mild weakness in the ankle into dorsiflexion on the left. (T. 538, 542).

Turning to the ALJ's RFC determination, the ALJ found that Plaintiff could perform sedentary work, except that he requires the ability to sit or stand every 30 minutes and is unable to stand for more than 40 minutes consecutively. (T. 16-17.) In making this determination, the ALJ afforded great weight to Dr. Zahn's opinion. (T. 17.) However, the ALJ did not explicitly weigh, or otherwise discuss, the opinions of treating orthopedic surgeons, Dr. Shankman and Dr. Bergeron. (T. 17.)

9

"SSA regulations provide a very specific process for evaluating a treating physician's opinion and instruct ALJs to give such opinions 'controlling weight' in all but a limited range of circumstances." *Greek v. Colvin,* 802 F.3d 370, 376 (2d Cir. 2015). If a treating physician's opinion is not afforded controlling weight, the ALJ must consider the regulatory factors set forth above to determine how much weight to give it, and should articulate "good reasons" for the weight given. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran*, 362 F.3d at 32.

Accordingly, under the treating physician rule, the ALJ was required either to give Dr. Shankman and Dr. Bergeron's opinions controlling weight or to provide good reasons for discounting the opinions. *Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010) ("The ALJ was required either to give . . . [the treating physician's] opinions controlling weight or to provide good reasons for discounting them.) When an ALJ fails to satisfy the treating physician rule, "such an error ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." *Id.*

The Court recognizes that remand for an error is not required when application of the correct legal principles could only lead to the same conclusion. *Id.* However, here, Dr. Shankman and Dr. Bergeron's opinions were significantly more favorable to Plaintiff than Dr. Zahn's opinion and the ALJ's RFC determination, as Dr. Shankman and Dr. Bergeron opined that Plaintiff had additional physical limitations.[3] (T. 457-58, 543.) For example, among other additional limitations, Dr. Bergeron opined that Plaintiff must avoid stooping. (T. 543.)

---

[3] In addition to the physical limitations included in the ALJ's RFC determination, Dr. Shankman opined that Plaintiff would need to sit and stand "at his own volition," and could not perform rapid repetitive motion with the back, or climb heights. (T. 457-58.) Additionally, Dr. Bergeron opined that Plaintiff must be allowed to sit, stand and walk "as tolerated" at work, with no large range of motion of the lumbar area, stooping, crawling, reaching, or pushing or pulling more than approximately 25 pounds occasionally and 12 pounds frequently. (T. 543.)

Notably, "some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work." SSR 85-15, 1985 WL 56857 (1985).

For these reasons, remand is necessary for the ALJ to weigh the opinions of treating orthopedic surgeons, Dr. Shankman and Dr. Bergeron, and explain the weight afforded to their respective opinions. Against that backdrop, the ALJ should then re-evaluate the RFC and Plaintiff's credibility, and conduct a new step five determination based on a proper weighing of the opinion evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: July 5, 2016
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge